UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 24-173(3) (DSD/DLM)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

SAID SHAFII FARAH,
   also known as "abti,"

        Defendant.

**PLEA AGREEMENT AND SENTENCING STIPULATIONS**

The United States of America and the defendant, SAID SHAFII FARAH, agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter "the United States" or "the Government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges**. The defendant agrees to plead guilty to Count Two of the Indictment, which charges the defendant with bribery of a juror, in violation of Title 18, United States Code, Section 201. The defendant fully understands the nature and elements of the crime with which he has been charged.

Upon imposition of sentence, the government agrees to move to dismiss those remaining counts against the defendant contained in the Indictment.

2. **Factual Basis**. The defendant is pleading guilty because he is in fact guilty of Count Two of the Indictment. In pleading guilty, the defendant admits the

1

following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

On or about June 2, 2024, in the State and District of Minnesota, and elsewhere, defendant SAID SHAFII FARAH, directly and indirectly, corruptly gave, offered, and promised something of value to a public official or person selected to be a public official—specifically, a juror in the trial *United States v. Abdiaziz Shafii Farah, et al.*—with intent to influence an official act—namely, to return a not guilty verdict in the trial, in violation of Title 18, United States Code, Section 201.

More specifically, SAID SHAFII FARAH participated in a conspiracy to bribe a juror in the trial *United States v. Abdiaziz Shafii Farah, et al.* FARAH and his co-defendants decided to offer Juror 52 a cash bribe in exchange for returning a not guilty verdict in their trial.

Conspirators Abdimajid Nur and Abdiaziz Farah researched Juror 52's address and other personal information online and via social media, including Juror 52's Facebook account. Through their online research, conspirators Abdimajid Nur and Abdiaziz Farah identified Juror 52's home address and found information about Juror 52's background and family members.

SAID FARAH's co-conspirator and co-defendant at trial, Abdimajid Nur, recruited Ladan Ali to deliver the bribe money to Juror 52. At the time, Ladan Ali was living in Seattle, Washington. During the trial, Ladan Ali flew from Seattle to Minneapolis to meet with Abdimajid Nur and discuss the plan to bribe Juror 52.

Ladan Ali agreed to deliver the bribe money to Juror 52 in exchange for a $150,000 cash payment.

On Thursday, May 30, 2024, Ladan Ali flew from Seattle to Minneapolis, Minnesota, to deliver the bribe money to Juror 52. Abdimajid Nur asked Ladan Ali to surveil and follow Juror 52 home as she left court for the day. Abdimajid Nur gave Ladan Ali a photo of Juror 52's car and a map of the Jerry Haaf Memorial Parking Ramp where Juror 52 parked.

On Friday, May 31, 2024, Ladan Ali attempted to follow Juror 52 home as she left the Jerry Haaf Parking Ramp at the conclusion of the first day of closing arguments.

On June 1, 2024, Ladan Ali told Abdimajid Nur—falsely—that she had approached Juror 52 at a bar. Ladan Ali told Abdimajid Nur that Juror 52 was interested in taking the bribe and wanted $500,000 in exchange for returning a not guilty verdict. Ladan Ali said that Juror 52 wanted Ladan Ali to deliver the money at noon on Sunday, June 2, when Juror 52 would be home alone. None of this was true. Ladan Ali did not speak with Juror 52, and Juror 52 never agreed to accept a bribe.

Nevertheless, believing Ladan Ali's account to be true, Abdimajid Nur relayed Ladan Ali's account to Abdiaziz Farah, who said that he would gather the bribe money. At approximately 11:03 PM on June 1, 2025, Said Farah's brother and co-conspirator Abdiaziz Farah called Said Farah, informed him of the plan to bribe Juror 52, and asked for Said Farah's assistance in gathering cash for the bribe. On the

3

morning of Sunday, June 2, SAID FARAH gathered a portion of the $200,000 in cash for use as bribe money. In addition to SAID FARAH's efforts to obtain the bribe money, a former Feeding Our Future employee who is charged in another indictment with participating in the fraudulent scheme to obtain federal child nutrition program funds, also worked to gather cash for the bribe. SAID FARAH and this individual obtained the cash from multiple individuals as well as a Hawala located near the Karmel Mall.

On the afternoon of June 2, SAID FARAH and his brother Abdiaziz Farah met with Abdimajid Nur outside of SAID FARAH's business, Bushra Wholesalers. SAID FARAH and Abdiaziz Farah gave Abdimajid Nur a cardboard box containing $200,000 in cash to bribe Juror 52.

Abdimajid Nur then met Ladan Ali in a parking lot in Bloomington, Minnesota, to give her the bribe money. Abdimajid Nur handed Ladan Ali the cardboard box containing the $200,000 in cash. Ladan Ali took the cash out of the box and put it into one of the Hallmark gift bags. Abdimajid Nur then instructed Ladan Ali meet Abdulkarim Farah at a location near Juror 52's house so that Abdulkarim Farah could accompany Ladan Ali to Juror 52's house and record her delivery of the bribe as proof that the bribe money was delivered and that Juror 52 accepted the bribe.

Later that night, SAID FARAH received the video of Ladan Ali delivering the bribe money via an encrypted messaging app. SAID FARAH later deleted the video in order to conceal his involvement in the bribery scheme.

3.     **Waiver of Pretrial Motions.** The defendant understands and agrees that the defendant has certain rights to file pre-trial motions. As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to have any pending motions resolved and to file any additional pre-trial motions in this case. The defendant agrees that, by pleading guilty, he is withdrawing any motions previously filed.

4.     **Waiver of Constitutional Trial Rights.** The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5. **Additional Consequences.** The defendant understands that as a result of this conviction, the defendant could experience additional collateral consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office. If the defendant is not a United States citizen, as a result of a plea of guilty, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant has discussed with his attorney the punishments and consequences of pleading guilty, understands that not all of the consequences can be predicted or foreseen, and still wants to plead guilty in this case.

6. **Statutory Penalties.** The defendant understands that Count Two of the Indictment, charging bribery of a juror in violation of 18 U.S.C. § 201 is a felony offense that carries the following statutory penalties:

    a.     a maximum of 15 years in prison;

    b.     a supervised release term of at least 1 year up to a maximum supervised release term of 3 years;

    c.     a maximum fine of $250,000;

    d.     a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A);

7. **Guidelines Calculations.** The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the

Court will consider the United States Sentencing Guidelines in determining the appropriate sentence. The parties stipulate to the following guidelines calculations:

    a.    Base Offense Level. The parties agree that the base offense level is 12. U.S.S.G. § 2C1.1(a)(2).

    b.    Specific Offense Characteristics. The parties agree that the offense level should be increased by 10 levels because the value of the bribe was more than $150,000 but less than $250,000. U.S.S.G. §§ 2C1.1(b)(2) and 2B1.1(b)(1)(F). The parties agree that the offense level should be increased by 4 levels because the offense involved a public official in a high-level decision-making or sensitive position. U.S.S.G. § 2C1.1(b)(3). The parties agree that no other specific offense characteristics apply.

    c.    Chapter 3 Adjustments. The parties agree that the offense level should be increased 2 levels because the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction. U.S.S.G. § 3C1.1. The parties further agree that the offense level should be increased by 3 levels because the defendant committed the offense he was on federal pretrial release. U.S.S.G. § 3C1.3. The defendant reserves the right to argue that the defendant was a minor participant in any criminal activity, pursuant to U.S.S.G. § 3B1.2(b). The government reserves the right to argue that the minor participant provision in U.S.S.G. § 3B1.2(b) does not apply. The parties agree that no other Chapter 3 adjustments apply.

    d.    Acceptance of Responsibility. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of the defendant's intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant

        engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing.

        Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an adjustment for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility.

e.    <u>Criminal History Category</u>. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category I. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

f.    <u>Zero-Point Offender Adjustment</u>. Because the defendant has zero criminal-history points and no disqualifying conduct, the parties agree the defendant qualifies for a 2-level adjustment under U.S.S.G. § 4C1.1.

g.    <u>Guidelines Range</u>. If the adjusted offense level is 26, and the criminal history category is I, the Sentencing Guidelines range is **63 to 78 months of imprisonment**. However, if the adjusted offense level is 24, and the criminal history category is I, the Sentencing Guidelines range is **51 to 63 months of imprisonment**.

h.    <u>Fine Range</u>. If the adjusted offense level is 26, the Sentencing Guidelines fine range is $25,000 to $250,000, and if the adjusted offense level is 26, the Sentencing Guidelines fine range is $20,000 to $200,000  U.S.S.G. § 5E1.2(c).

i.    <u>Supervised Release</u>. The Sentencing Guidelines' term of supervised release is 1 to 3 years. U.S.S.G. § 5D1.2.

8.      **Revocation of Supervised Release.** The defendant understands that if the defendant were to violate any supervised release condition while on supervised release, the Court could revoke the defendant's supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that the defendant be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

9.      **Discretion of the Court.** The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and that their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also vary and/or depart from the applicable Guidelines range. If the Court determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

10.     **Agreements as to Sentencing Recommendation.** The parties are free to recommend whatever sentence they deem appropriate. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

11. **Special Assessment.** The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted, pursuant to U.S.S.G. § 5E1.3. The defendant agrees to pay the special assessment.

12. **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution, fines, and forfeiture ordered by the Court. The defendant agrees to complete a financial statement within two weeks of the entry of her guilty plea. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate the defendant's ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

13. **Forfeiture.** The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) in conjunction with 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the Bribery of a Juror offense charged in Count 2 of the Indictment, including but not

limited to: $120,000 in United States currency; $7,000 in U.S. currency seized from 15418 Hampshire Lane, Savage, Minnesota; and $3,000 in U.S. currency seized from 2713 5th Avenue South, Minneapolis, Minnesota.

The defendant agrees that the United States may, at its option, forfeit such property through civil, criminal or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest he may have in the property described above. The defendant waives any right to receive notice, pursuant to 18 U.S.C. § 983, of any non-judicial forfeiture proceedings for the property, and he waives the requirements of Rule 32.2 of the Federal Rules of Criminal Procedure. The defendant waives all statutory and constitutional defenses to the forfeiture and waives any right to contest or challenge in any manner (including direct appeal, habeas corpus, or any other means) such forfeiture on any grounds. To the extent the defendant has sought remission or otherwise challenged the forfeiture of the above-described property, the defendant withdraws any such challenges.

The United States reserves its right to seek a money judgment forfeiture, to forfeit substitute assets and to forfeit additional directly forfeitable property.

14. **Waivers of Appeal and Collateral Attack**. The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes but is not limited to the defendant's waiver of the right to appeal guilt or innocence, any issues relating to the change-of-plea proceedings, the sentence imposed, the Guidelines calculations, any restitution obligations, and the constitutionality of the

11

statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment above the high end of the Guidelines range.

The defendant also waives the right to collaterally attack his conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel. This collateral-review waiver does not operate to waive a collateral challenge under 28 U.S.C. § 2255 based on new legal principles enunciated in Supreme Court case law decided after the date of this Plea Agreement that are both substantive and have retroactive effect. For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

The United States agrees to waive its right to appeal any sentence except the government may appeal the substantive reasonableness of a term of imprisonment below low end of the Guidelines range.

15.   **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

16. **Complete Agreement**. This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant. By signing this plea agreement, the defendant acknowledges: (a) that the defendant has read the entire agreement and has reviewed every part of it with the defendant's counsel; (b) that the defendant fully understands this plea agreement; (c) that no promises, agreements, understandings, or conditions have been made or entered into in connection with his decision to plead guilty, except those set forth in this plea agreement; (d) that the defendant is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (e) that the defendant has entered into this plea agreement freely, voluntarily, and knowingly; and (f) that the defendant's decision to plead guilty in accord with the terms and conditions of this plea agreement is made of the defendant's own free will.

JOSEPH H. THOMPSON
Acting United States Attorney

Date: 8/21/2025

BY: Matthew S. Ebert
Harry M. Jacobs
Daniel W. Bobier
Assistant United States Attorneys

Date: 07/30/2025

Said Shafii Farah
Defendant

Date: 07/30/2025

Eric Olson
Mike Villafranca
Counsel for Defendant