UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 24-173(4) (DSD)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **GOVERNMENT'S POSITION** |
| v. ) | **REGARDING SENTENCING** |
| ) | |
| ABDULKARIM SHAFII FARAH, ) | |
| ) | |
| Defendant. ) | |

The United States of America, by and through its attorneys, Daniel N. Rosen, United States Attorney for the District of Minnesota, and Matthew C. Murphy, Assistant United States Attorney, submits the following sentencing memorandum and respectfully requests that the Court impose a sentence of 57 months' imprisonment, the high-end of the guidelines range.

## THE OFFENSE CONDUCT

On April 22, 2024, jury selection began in the case of United States v. Farah et al., 22-124 (NEB). Two of the defendants in that case, Abdiaziz Farah and Said Farah, are brothers of Defendant Abdulkarim Farah. Soon after the jury was selected, Abdiaziz identified Juror 52 as a candidate to bribe in exchange for a not-guilty verdict, and he began discussing that possibility with Said and another of his co-defendants, Abdimajid Nur. The three began researching Juror 52 online, including locating her home address. They also

had Mr. Farah conduct surveillance of Juror 52 and of Juror 52's house, including identifying where Juror 52 parked her car during her jury service. Soon thereafter, Abdimajid recruited a former girlfriend, Ladan Ali, to help plan and deliver the bribe.

On May 30, 2024, Ladan flew from her home in Seattle, Washington, to Minneapolis, Minnesota, to execute the juror bribery scheme. Abdimajid provided Ladan a photo of Juror 52's car, which he told Ladan Juror 52 parked in the Jerry Haaf Memorial Parking Ramp every day during trial. On May 31, 2024, the first day of closing arguments, Ladan followed Juror 52 from the Haaf ramp to her home. Ladan continued to surveille Juror 52's home over the ensuing three days.

On June 2, 2024, Abdimajid met Abdiaziz and Said at Said's business, Bushra Wholesalers, in South Minneapolis, where Said gave Abdimajid $200,000 in cash. Abdimajid took the money to a parking lot in Bloomington, where he transferred it to Ladan. Abdimajid instructed Ladan to go to a gas station near Juror 52's house, where she would rendezvous with Mr. Farah.

Because Abdiaziz and Said did not trust Ladan, they instructed their brother, Mr. Farah, to meet Ladan at the gas station. He was told to drive her in her rental car to Juror 52's home to deliver the bribe payment, and to record the exchange. Ladan and Mr. Farah met at the gas station later that evening as instructed. Mr. Farah first drove Ladan to a Target store where he

purchased a screwdriver and removed the license plate from Ladan's rental car. He then drove Ladan to Juror 52's house. While Ladan walked the bribery payment to Juror 52's front door, Mr. Farah took a video with his cell phone from the car. The video shows Ladan approach the front door and hand a bag containing the bribery payment to Juror 52's stepfather, telling him it was a "present" for Juror 52 and that there would be more if she voted not guilty. Mr. Farah sent the video via the Signal encrypted messaging app to his brother Abdiaziz. To her credit, Juror 52 immediately reported the bribery attempt to the police.

Upon learning that Juror 52 had reported the bribery payment and that authorities were investigating, Mr. Farah deleted the encrypted messaging app Signal from his phone, including the evidence that he had transmitted the video of Ladan delivering the bribe payment to his brother.

## SENTENCING RECOMMENDATION

In *Gall v. United States*, the Supreme Court set forth the appropriate sentencing methodology. 552 U.S. 38, 49–50 (2007). The district court should first calculate the advisory Sentencing Guidelines range. *Id.* at 49. After calculating a defendant's advisory Sentencing Guidelines range and hearing from the parties, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) and make an individualized assessment based on the facts in arriving at an appropriate sentence. *Id.* at 49–50; *see also United*

3

*States v. Ruvalcava-Perez*, 561 F.3d 883, 886 (8th Cir. 2009) ("In sentencing a defendant, the district court should first determine the appropriate Guidelines range, then evaluate whether a traditional departure is warranted, and finally decide whether or not to impose a guideline sentence after considering all the § 3553(a) sentencing factors.").

## A.     Sentencing Guidelines Range

The government has no objections to the Guidelines calculation contained in the presentence report ("PSR"). Accordingly, the government agrees that the base offense level is 12, pursuant to U.S.S.G. § 2C1.1(a)(2). The government agrees that the offense level should be increased by 10-levels pursuant to U.S.S.G. §§ 2C1.1(b)(2) and 2B1.1(b)(1)(F) because the value of the bribe was more than $150,000 but less than $200,000, by another 4-levels pursuant to U.S.S.G. § 2C1.1(b)(3) because ta juror is a public official, and by another 2-levels because the defendant attempted to obstruct and impede the administration of justice with respect to the investigation of the instant offense, pursuant to U.S.S.G. § 3C1.1. The government further agrees that the offense level should be reduced by 3-levels for acceptance of responsibility, pursuant to U.S.S.G. § § 3E1.1(a)-(b), and by another 2-levels because the defendant was a minor participant in the bribery scheme, pursuant to U.S.S.G. § 3B1.2(b). Finally, the government agrees that the defendant falls into criminal history category I.

With a total offense level of 23 and a criminal history category I, the sentencing Guidelines range is 46 to 57 months' imprisonment

**B.     Section 3553(a) Sentencing Factors**

Section 3553(a) requires the Court to analyze several factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a).

    **1.     Nature and Circumstances of the Offense**

Mr. Farah committed a profoundly serious crime that merits a serious sentence. Tampering with juries, whether by bribery or intimidation, compromises our entire legal system. It undermines public trust in the fairness of criminal trials by corrupting the bedrock principle that an impartial jury will render its verdict based solely on the facts presented at trial. It is not hyperbolic to say that without trust that our criminal courts will deliver justice fairly, the vitality of our democracy is threatened.

    **2.     History and Characteristics of the Defendant**

The defendant has no prior felony arrests or convictions and no history of substance abuse. He is a lifelong Minnesota resident who enjoyed every advantage, including a stable, supportive family and excellent educational

5

opportunities. He is single, has no children, and has no serious physical or mental health conditions.

### 3. Deterrence, Respect for the Law, and Protecting the Public

Mr. Farah's conduct is so abhorrent and destabilizing that the Court should send a strong message to the community that such behavior simply will not be tolerated. Others who might consider bribing a juror must know that doing so will result in devastating consequences. Nothing less than a sentence at the high-end of the guidelines range will suffice to send the message that justice is not, and never will be for sale, and that the Court will levy maximum sentences upon those who jeopardize the integrity of our judicial system.

### 4. The Need to Avoid Unwanted Disparities

Finally, the Court must consider the need to avoid unwarranted disparities. 18 U.S.C. § 3553(a). As noted in the PSR, defendants sentenced within the past four years under the same guideline provision and with the same offense level and criminal history as Mr. Farah receive an average sentence of 29 months. The Court should bear in mind-however, that the bribery scheme perpetrated by Mr. Farah is so unprecedented and brazen that there simply are not defendants whose offense conduct is analogous. The government therefore respectfully suggests that when considering the need to avoid sentencing disparities, the Court should place greater weight on the

applicable sentencing guideline range of 46 to 57 months than on the judiciary sentencing information.

## CONCLUSION

For the reasons stated above, the government respectfully recommends that the Court sentence Mr. Farah to 57 months' imprisonment. Such a sentence is sufficient but not greater than necessary to meet Section 3553(a) factors.

Respectfully Submitted,

Dated: February 11, 2026,    DANIEL N. ROSEN
United States Attorney

 /s/ *Matthew C. Murphy*
BY:   MATTHEW C. MURPHY
Assistant U.S. Attorney