UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 24-173(5) (ECT)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) | |
| v. | ) | **GOVERNMENT'S POSITION REGARDING SENTENCING** |
| LADAN MOHAMED ALI, Defendant. | ) | |

The United States of America, by and through its attorneys, Daniel N. Rosen, United States Attorney for the District of Minnesota, and Matthew C. Murphy, Assistant United States Attorney, submits the following sentencing memorandum and respectfully requests that the Court impose a sentence of 57 months' imprisonment.

## THE OFFENSE CONDUCT

On April 22, 2024, jury selection began in the case of United States v. Farah et al., 22-124 (NEB), in which Ladan Ali's former boyfriend, Abdimajir Nur, was a defendant. Soon after the jury was selected, Mr. Nur and his co-defendants Abdiaziz and Said Farah concocted a scheme to bribe a juror in exchange for a not-guilty verdict. They identified Juror 52 as the best candidate to bribe—believing her to be the youngest and only person of color on the jury—and began making plans to bribe her. The three began

researching Juror 52 online, including locating her home address. They also had Abdulkarim Farah, Abdiaziz and Said's younger brother, conduct surveillance of Juror 52 and of Juror 52's house, including identifying where Juror 52 parked her car during her jury service.

Soon thereafter, Mr. Nur recruited Ms. Ali to participate in the bribery scheme. He promised to pay her $150,000 to help plan and deliver the bribe. On May 30, 2024, Ms. Ali flew from her home in Seattle, Washington, to Minneapolis, Minnesota, to execute the juror bribery scheme. Mr. Nur provided Ms. Ali a photo of Juror 52's car, which he told Ladan Juror 52 parked in the Jerry Haaf Memorial Parking Ramp every day during trial. On May 31, 2024, the first day of closing arguments, Ms. Ali followed Juror 52 from the Haaf ramp to her home. Ms. Ali continued to surveille Juror 52's home over the ensuing three days.

On June 1, 2024, Ms. Ali told Mr. Nur that she had approached Juror 52 in a bar and that Juror 52 demanded $500,000 in exchange for a not-guilty vote. Ms. Ali further reported that Juror 52 wanted the money delivered to her home the following day. Ms. Ali fabricated this entire interaction. She never met Juror 52. It was Ms. Ali's intention to steal the bribe money and return to Seattle. Mr. Nur nevertheless believed Ms. Ali's account and immediately relayed the information to Abdiaziz Fara. Abdiaziz Farah, in turn, enlisted his brother Said Farah to gather the money.

The following day, June 2, 2024, Mr. Nur met Said Farah at his business, Bushra Wholesaler, where Said Farah gave Mr. Nur $200,000 cash. Mr. Nur took the money to Ms. Ali, who was to deliver it to Juror 52's home along with a promise of another $300,000 after the defendants were acquitted. Because Abdiaziz and Said Farah did not trust Ms. Ali, however, Mr. Nur told her to first meet with Abdulkarim Farah, who would accompany her to Juror 52's home and record delivery of the bribe. On her way to meet with Abdulkarim Farah, Ms. Ali stole $80,000 of the briber money for herself.

At 8:50 PM, on June 2, 2024, Ms. Ali and Abdulkarim Farah arrived at Juror 52's home. While Abdulkarim filmed from the car, Ms. Ali walked the bribe payment to Juror 52's door, rang the bell, and then handed the bag to Juror 52's stepfather. She told him it was a present for Juror 52 and that there would be more if she voted not guilty. After delivering the bribe, Ms. Ali met up with Mr. Nur and told her what had transpired. Meanwhile Abdulkarim Farah circulated the video to the Abdiaziz Farah, Said Farah, and Mr. Nur. Unbeknownst to the defendant's Juror 52 immediately reported the attempted bribe to the police and the Court. The next morning, before closing arguments resumed, Judge Brasel announced the development and ordered the defendants to surrender their phones to the FBI. Before surrendering his phone, Mr. Nur warned Ms. Ali that the bribe hadn't worked and she should leave Minnesota. Although her return flight to Seattle was not scheduled until

June 5, 2024, Ms. Ali booked a new flight for June 3. Before leaving, she put the clothes she had worn when delivering the bribe in a box with the cash she stole and shipped it via UPS to her home in Seattle.

On June 2, 2024, Mr. Nur met Abdiaziz and Said Farah at Said Farah's business, Bushra Wholesalers, in South Minneapolis, where Said gave Mr. Nur $200,000 in cash. Mr. Nur took the money to a parking lot in Bloomington, where he transferred it to Ladan. Mr. Nur instructed Ladan to go to a gas station near Juror 52's house, where she would rendezvous with Abdulkarim and then deliver the bribe.

Ms. Ali's fingerprints were later found on the gift bag given to Juror 52's stepfather that contained the bribe money. The GPS tracking devices she had ordered from Amazon were also recovered from her hotel in Minneapolis.

Ms. Ali was indicted on June 25, 2024, and pleaded guilty to bribing a juror on September 5, 2024.

## SENTENCING RECOMMENDATION

In *Gall v. United States*, the Supreme Court set forth the appropriate sentencing methodology. 552 U.S. 38, 49–50 (2007). The district court should first calculate the advisory Sentencing Guidelines range. *Id.* at 49. After calculating a defendant's advisory Sentencing Guidelines range and hearing from the parties, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) and make an individualized assessment based

on the facts in arriving at an appropriate sentence. *Id.* at 49–50; *see also United States v. Ruvalcava-Perez*, 561 F.3d 883, 886 (8th Cir. 2009) ("In sentencing a defendant, the district court should first determine the appropriate Guidelines range, then evaluate whether a traditional departure is warranted, and finally decide whether or not to impose a guideline sentence after considering all the § 3553(a) sentencing factors.").

**A. Sentencing Guidelines Range**

The government agrees that the base offense level is 12, pursuant to U.S.S.G. § 2C1.1(a)(2). The government agrees that the offense level should be increased by 8 levels pursuant to U.S.S.G. §§ 2C1.1(b)(2) and 2B1.1(b)(1)(E) because the value of the bribe was more than $150,000 but less than $200,000, and by 4 levels pursuant to U.S.S.G. § 2C1.1(b)(3) because a juror is a public official. The government notes however that, at the time of the offense, the change of plea, and the originally scheduled sentencing hearing in this matter, the offense level would have been 2-levels higher based upon the amount of the bribe. The government further agrees that the offense level should be reduced by 3 levels for acceptance of responsibility, pursuant to U.S.S.G. § § 3E1.1(a)-(b). Finally, the government agrees that the defendant falls into criminal history category II.

With a total offense level of 21 and a criminal history category II, the sentencing Guidelines range is 41-51 months' imprisonment. Had the

defendant been sentenced prior to November 1, 2026, the total offense level would have been 23, and the guideline sentence range would have been 46-57 months.

## B. Section 3553(a) Sentencing Factors

Section 3553(a) requires the Court to analyze several factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a).

### 1. Nature and Circumstances of the Offense

Ms. Ali committed a profoundly serious crime that merits a serious sentence. Tampering with juries, whether by bribery or intimidation, compromises our entire legal system. It undermines public trust in the fairness of criminal trials by corrupting the bedrock principle that an impartial jury will render its verdict based solely on the facts presented at trial. It is not hyperbolic to say that without trust that our criminal courts will deliver justice fairly, the vitality of our democracy is threatened.

### 2. History and Characteristics of the Defendant

Ms. Ali is of Somali descent but was born in 1993 in a refugee camp in Kenya. She is the youngest of 11 children in her family, although her siblings

have different combinations of parents. Ms. Ali immigrated to the United States in 1996, when she was 3 years old. Her family initially lived in San Diego, California, but moved to Seattle, Washington six years later, in about 2002. Ms. Ali ran away from home when she was 16 due to abuse and moved in with her boyfriend's family. At around the same time, she quit school. She later obtained her GED.

Ms. Ali currently resides in Burnsville. Minnesota. She has lived intermittently in the Twin Cities area and the Seattle area since at least 2020. She previously worked as an insurance saleswoman but was terminated for forging an employer-issued check. She later worked for a company, Afro Produce, that provided fake invoices to people involved in the Federal Child Nutrition Program fraud scheme.

Ms. Ali has one daughter who is seven years old and lives with Ms. Ali's relatives in Seattle. Ms. Ali has a history of depression and anxiety but does not currently take medication for those conditions. She also has a history of alcohol abuse.

**3. Deterrence, Respect for the Law, and Protecting the Public**

Ms. Ali's conduct is so abhorrent and destabilizing that the Court should send a strong message to the community that such behavior simply will not be tolerated. Others who might consider bribing a juror must know that doing so will result in devastating consequences. The court should send a message to

the public that justice is not, and never will be for sale, and that those who jeopardize the integrity of our judicial system will pay a very heavy price.

**4. The Need to Avoid Unwanted Disparities**

Finally, the Court must consider the need to avoid unwarranted disparities. 18 U.S.C. § 3553(a). As noted in the PSR, the three defendants sentenced within the past four years under the same guideline provision and with the same offense level and criminal history as Ms. Ali received an average sentence of 6 months. The Court should bear in mind, however, that the bribery scheme perpetrated by Ms. Ali is so unprecedented and brazen that there simply are no defendants whose offense conduct is analogous. The government therefore respectfully suggests that when considering the need to avoid sentencing disparities, the Court should place greater weight on the applicable sentencing guideline range than on the judiciary sentencing information.

Ms. Ali's co-defendants in the bribery scheme have received varied but serious punishments. Abdiaziz Farah received a sentence of 120 months. Said Farah received a sentence of 78 months. Abdulkarim Farah was sentenced to 57 months. Ms. Ali's circumstances are most analogous with Abdulkarim Farah Like Abdulkarim Farah, Ms. Ali was not a defendant in the underlying fraud scheme but was recruited to assist with the bribery payment. Abdulkarim Farah and Ms. Ali were also both instrumental in surveilling Jury

52 and in delivering the bribery payment. A sentence of 57 months is therefore warranted.

## CONCLUSION

For the reasons stated above, the government respectfully recommends that the Court sentence Ms. Ali to 57 months' imprisonment. Such a sentence is sufficient but not greater than necessary to meet Section 3553(a) factors.

Respectfully Submitted,

Dated: November 6, 2026,

DANIEL N. ROSEN
United States Attorney

/s/ *Matthew C. Murphy*
BY: MATTHEW C. MURPHY
Assistant U.S. Attorney